**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| BUFF CITY SOAP LLC, BUFF CITY SOAP LLC (DELAWARE), BUFF CITY SOAP FRANCHISING LLC, BUFF CITY SOAP SUPPLY LLC and BUFF CITY SOAP HOLDINGS LLC, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 2:21-02462-JPM-cgc |
| MAGEN BYNUM, BUFF CITY NEW ALBANY, LLC, MAGNOLIA SOAP & BATH CO. OF OXFORD, LLC, MAGNOLIA SOAP & BATH CO. OF NEW ALBANY, LLC, MAGNOLIA SOAP & BATH CO. OF TUPELO, LLC, MAGNOLIA SOAP AND BATH CO. OF JACKSON, LLC, MAGNOLIA SOAP AND BATH CO. FRCH, LLC, HOPE IN SOAP COLLIERVILLE, LLC, VANGUARD ENTERPRISES, INC., and MAGNOLIA SOAP & BATH HOLDING CO., LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION
TO TRANSFER AND DISMISS**

This cause is before the Court on Defendants' Motion to Transfer and Dismiss, filed on

January 5, 2022.  (ECF No. 72.)[1]  Defendants also filed a supporting Memorandum of Law.

(ECF No. 73.)  On February 11, 2022, Plaintiffs filed a Memorandum of Law in Opposition to

---

[1] All ECF citations refer to the case pending before this Court unless otherwise noted.

Defendants' Motion to Transfer and Dismiss.  (ECF No. 80.)  Defendants filed a Reply in Support of their Motion on February 25, 2022.  (ECF No. 82.)

For the reasons set forth below, Defendants' Motion to Transfer and Dismiss is **DENIED IN PART** and **GRANTED IN PART**.

## I.    BACKGROUND

### A.  Factual Background

This is an action for misappropriation of trade secrets and false advertising.  (1st Amend. Compl., ECF No. 66 ¶¶ 191–231.)  Plaintiff Buff City Soap LLC "is a Memphis and Dallas headquartered soap and bath products company that specializes in handcrafted, quality soap and related bath products."[2]  (Id. ¶ 23.)  Buff City Soap LLC operates "at least one hundred Buff City Soap stores across twenty states," many of which are franchises.  (Id.)  Plaintiffs allege that Buff City LLC's founders "improved upon the traditional method of making soap" through a "proprietary, and confidential, soap making process" that "allowed for the rapid curing of the soap, as well as the elimination of harmful fumes that would be potentially hazardous to their staff and customers."  (Id. ¶ 26.)  Plaintiffs allege that "Buff City Soap LLC's recipes, ingredients, manufacturing processes, client databases and other proprietary information are all confidential trade secrets (collectively, 'Buff City Trade Secrets')."  (Id. ¶ 27.)

On October 1, 2017, Defendant Magen Bynum, "through her now-dissolved company [Buff City New Albany LLC ('BCNA')], entered into [an] Operating Agreement" with Buff City Soap LLC.  (Id. ¶ 38; see also ECF No. 66-1.)  "Bynum and BCNA thereafter operated Buff City Soap locations in Oxford, New Albany, and Tupelo, Mississippi pursuant to the

---

[2] "In September 2021[,] Buff City Soap LLC (Tennessee) was merged into Buff City Soap LLC (Delaware)." (ECF No. 66 ¶ 3.)  Plaintiffs refer to both these entities collectively as Buff City Soap LLC throughout their First Amended Complaint.  (Id.)

operating agreement."  (Id. ¶ 39.)   The Operating Agreement contains the following relevant

provisions:

> I.  . . . Buff City New Albany [LLC] agrees [to] use Buff City Soap LLC as the exclusive raw material provider to include all supplies necessary to produce "sale ready" Buff City Soap products, including but not limited to, oils, butters, citric acid, baking soda, containers, items deemed accessories . . ., and any new raw materials added as necessary for future products.

> II.  Product creativity is encouraged between all Buff City locations.   An open source communication environment is the goal.  Products must be created within the brand standards[,] specifically to exclude the use of any preservatives[] [or] synthetic chemicals . . . .   The recipes, trade secrets, etc[.] final ownership of all products belong to Buff City Soap [LLC].  The right to create, market and place for sale all Buff City Soap products runs concurrent with Buff City Soap [LLC] active operating agreements.
> . . .

> IV.  In exchange for the license to use Buff City Soap [LLC]'s intellectual property, including trade secrets, recipes, marketing strategies, industry experience, and business model[,] Buff City New Albany [LLC] agrees to provide Buff City Soap [LLC] a monthly management fee equal to 5% of gross monthly retail sales . . . .

(ECF No. 66-1 at PageID 1181–82.)

Plaintiffs allege that "[b]y early August 2018, Buff City Soap LLC learned that Bynum

was beginning to operate a competing soap business" by operating a booth under the name Buff

City at an Atlanta wholesale market, without authorization from Buff City Soap LLC and in

contravention of the Operating Agreement.  (ECF No. 66 ¶ 48.)  Plaintiffs allege that Bynum

and BCNA entered into the Operating Agreement in order "to gain access to and misappropriate

Buff City Trade Secrets, including by learning Buff City's business model, pricing strategies,

and marketing strategies, and gaining access to Buff City's raw materials at discounted rates,

all to gain an unfair advantage to compete with Buff City."  (Id. ¶ 50.)  Plaintiffs additionally

allege that "Bynum and BCNA used the Buff City Trade Secrets" despite failing to pay the required 5 percent licensing fee under the Operating Agreement.  (Id. ¶ 51–52.)

In July 2018, "unbeknownst to Buff City Soap LLC," Bynum "submitted formation documents to the Mississippi Secretary of State for each of the Magnolia Soap Defendants." (Id. ¶ 53.)  Plaintiffs allege that prior to this, at BCNA's New Albany, Mississippi, retail location and while she was still bound by the Operating Agreement, "Bynum developed recipes, processes, and products that she would later use in her competing Magnolia Soap & Bath business."  (Id. 54.)  Plaintiffs allege that "[t]hese recipes, processes, and products were developed . . . by referencing a Buff City confidential recipe book and using Buff City equipment and raw materials."  (Id. ¶ 55.)  Plaintiffs further allege that these things "belong to Buff City under [paragraph II] of the Operating Agreement."  (Id. ¶ 56.) (quoting ECF No. 66-1 at PageID 1181–82 (". . . The recipes, trade secrets, etc. final ownership of all products belong to Buff City Soap [LLC]. . . .").) (emphasis omitted.)  (See also ECF No. 66 ¶ 59.)  ("[T]hese recipes and processes that Defendants use to make their soap and bath products constitute Buff City Trade Secrets, for the additional reason that they were developed at BCNA while Bynum was under the terms of the Operating Agreement.")  In addition to their Trade Secrets theory that is based on the language of the Operating Agreement, Plaintiffs also allege that Defendants owed them a duty of loyalty under their business relationship, requiring the "maintenance of the Buff City Trade Secrets' confidentiality."  (Id. ¶ 45.)

Plaintiffs allege that "[u]pon information and belief, Bynum and the Magnolia Soap Defendants . . . continue to use Buff City Trade Secrets . . . that Bynum learned while operating as a Buff City location to purchase additional raw materials to use in connection with her competing Magnolia Soap business" and to create and develop their competing products.  (Id.

¶ 62–63.)  Plaintiffs also allege that "[u]pon information and belief, Bynum and the Magnolia Soap Defendants have made preparations to open multiple new Magnolia Soap locations which will similarly use Buff City Trade Secrets."  (<u>Id.</u> ¶ 65.)  Plaintiffs assert one count for misappropriation of trade secrets under 18 U.S.C. § 1836(b) and one count for misappropriation of trade secrets under Tenn. Code Ann. §§ 47-25-1701 *et seq*.

Plaintiffs additionally assert, through detailed allegations that consume the majority of space in their First Amended Complaint, that Bynum and the Magnolia Soap Defendants "made and continue to make false and/or misleading advertising claims . . . in connection with the ingredients and benefits of their products."  (<u>Id.</u> ¶ 68; <u>see also</u> <u>id.</u> ¶¶ 68–190.)  Plaintiffs assert one count for unfair competition and false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and one count for false advertising under the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 *et seq*.

B.  *Procedural Background*

Plaintiffs commenced a similar suit (discussed in detail below) in the Northern District of Mississippi on February 18, 2020.  (<u>See</u> <u>Buff City Soap LLC v. Bynum</u>, Case No. 3:20-cv-00055-NBB-RP, ECF No. 1.)  Plaintiffs in the Mississippi action filed an Amended Complaint on April 21, 2021.  (Case No. 3:20-cv-00055-NBB-RP, ECF No. 103.)  That action concerns mainly Bynum and BCNA's alleged breach of the Operating Agreement and other common law duties to Plaintiffs, as well as trademark and trade dress infringement and false advertising claims.  (<u>See</u> <u>id.</u> ¶¶ 75–179.)  That case was set for trial on January 31, 2022 but was indefinitely continued due to "safety concerns related to the ongoing COVID-19 pandemic" and has not been reset.  (Case No. 3:20-cv-00055-NBB-RP, ECF No. 325.)  The Court has reopened the

defendants' motions for summary judgment and has yet to rule on those motions.  (Case No. 3:20-cv-00055-NBB-RP, ECF No. 338.)

Plaintiffs commenced this action in this Court on July 9, 2021.  (Compl., ECF No. 1.) On December 9, 2021, Plaintiffs received leave to file (ECF No. 65), and filed, a First Amended Complaint, adding new named plaintiffs to "fully reflect Buff City's corporate restructuring," as well as their new theory of trade secret misappropriation based on the language of the Operating Agreement as discussed above.  (ECF No. 66.)

On January 5, 2022, Defendants filed the instant Motion to Transfer and Dismiss and their accompanying Memorandum of Law.  (ECF Nos. 72, 73.)  Plaintiffs responded on February 11, 2022.  (ECF No. 80).  On February 25, 2022, Defendants filed a Reply in Support of their Motion.  (ECF No. 82.)  On January 5, 2022, Defendants Magnolia Soap & Bath Co. of Oxford, LLC, Magnolia Soap & Bath Co. of Tupelo, LLC, and Magnolia Soap and Bath Co. of Jackson, LLC, moved to dismiss the case against them for lack of personal jurisdiction pursuant to Rule 12(b)(2).  (ECF No. 70; Memorandum of Law in Support, ECF No. 71.)  Plaintiffs responded on February 11, 2022.  (ECF No. 79.)  Defendants replied on February 25, 2022. (ECF No. 81.)  The Court will address that Motion in a separate Order.

## II.   DISCUSSION

### A.  Legal Standard for First-to-File Rule

"The first-to-file rule is a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts."  Baatz v. Columbia Gas Transmission, LLC, 814 F.3d 785, 789 (6th Cir. 2016).  The rule "provides that, when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment."  Id. (internal citations omitted).  In deciding

whether to apply the first-to-file rule, "courts generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." Id. If the three factors above "support application of the rule, the court must also determine whether any equitable considerations, such as evidence of 'inequitable conduct, bad faith, anticipatory suits, [or] forum shopping,' merit not applying the first-to-file rule in a particular case." Id. (internal citations omitted). The decision of whether to apply the first-to-file rule is within the discretion of the district court, and the court should "dispense with the first-to-file rule where equity so demands." Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc., 16 F. App'x 433, 437 (6th Cir. 2001). "[D]eclining to apply the first-to-file rule [when the three factors are met, however,] should be done rarely." Baatz, 814 F.3d at 793.

When applying the first-to-file rule, a district court "may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit." Id. (quoting Smith v. SEC, 129 F.3d 356, 361 (6th Cir. 1997) (further internal citation omitted)). This is not an "exhaustive list." Id. "Dismissal may be an appropriate way to implement the first-to-file rule in some circumstances." Id. Courts in this Circuit have also found transfer of the second-filed case to be "appropriate under the first-to-file rule." Paige v. BitConnect Int'l PLC, No. 3:18-CV-058-CHB, 2018 WL 11309178, at *3 n.2 (W.D. Ky. Nov. 9, 2018). See also, e.g., Mitchell v. Wells Fargo Bank, N.A., No. 2:20-cv-02444-TLP-atc, 2020 WL 7480806, at *5 (W.D. Tenn. Dec. 18, 2020); Johansen v. Blue Raven Solar, LLC, No. 2:20-cv-2930, 2020 WL 8641290, at *1 (S.D. Ohio Nov. 17, 2020).

*B.  Analysis for First-to-File Rule*

Defendants contend that all three of the Baatz factors are met in this case and that equitable considerations support applying the first-to-file rule. (See ECF No. 73 at PageID

1759–63.)  They assert that the appropriate remedy is transferring the suit to the Northern District of Mississippi or, in the alternative, staying the litigation in this Court until after the Mississippi matter is resolved.  (Id. at PageID 1763–64.)  Plaintiffs respond that none of the three factors is met but that, "[i]f there is any doubt about the inapplicability of the first-to-file rule here," equitable considerations should drive the "Court [to] exercise its discretion in Plaintiffs['] favor."  (ECF No. 80 at PageID 1452–57.)  Plaintiffs additionally contend that neither transfer nor stay is appropriate here.  (Id. at PageID 1458.)  The Court addresses each of the three Baatz factors in turn below.  Because at least one of the three factors is not met, the Court finds the first-to-file rule inapplicable.

> i.      Chronology of events

"The dates to compare for chronology purposes of the first-to-file rule are when the relevant complaints are filed."  Baatz, 814 F.3d at 790.  "[F]or purposes of first-to-file chronology, the date that an original complaint is filed controls."  Aero Advanced Paint Tech., Inc. v. Int'l Aero Products, LLC, 351 F. Supp. 3d 1067, 1070 (S.D. Ohio 2018) (quoting Zide Sport Shop of Ohio, Inc. v. Ed Tobergate Assocs., Inc., 16 F. App'x 433, 437 (6th Cir. 2001)) (further internal citation omitted).

Defendants assert that the chronology of events "weighs strongly in favor of transfer" because the Mississippi suit was "filed almost a year and a half before the instant litigation." (ECF No. 73 at PageID 1259.)  Defendants add that "[i]t is especially problematic to begin a new litigation as discovery in the first-filed litigation is coming to a close."  (Id.)  Plaintiffs respond that "[i]t is undisputed that Plaintiffs brought the Mississippi action in February 2020, before the present Tennessee action was filed in July 2021."  (ECF No. 80 at PageID 1452.) Plaintiffs contend, however, that "the chronology here is not a significant factor in the first-to-

file analysis; rather, the lawsuits' different parties and substantial non-overlapping claims drive the inquiry." (Id.)  Defendants reply that Plaintiffs' argument "shows is that Buff City is unwilling to be constrained by indisputable facts in attempting to prosecute claims against Defendants in the most inefficient and costly manner.  The fact that a related case was filed in a different district almost two years before this case counsels for transfer." (ECF No. 82 at PageID 1478.)

Here, as Plaintiffs admit, the complaint in the Mississippi action was filed on February 18, 2020 (Case No. 3:20-cv-00055-NBB-RP, ECF No. 1), nearly seventeen months before Plaintiffs filed their Complaint in this Court, on July 9, 2021 (ECF No. 1).  Where similarity between the parties and issues is met, "the 'chronology of events' factor simply asks which of the two overlapping cases was filed first."  Baatz, 814 F.3d at 790 (internal citations omitted).  Even where the other two factors are not met, however, courts have looked simply to when the respective complaints were filed to determine whether the chronology-of-events factor is met.  See, e.g., Honaker v. Wright Bros. Pizza, Inc., No. 2:18-cv-1528, 2019 WL 4316797, at *3–4 (S.D. Ohio Sept. 11, 2019).  Thus, this factor favors applying the first-to-file rule.

ii.    Similarity of the parties

"The first-to-file rule applies when the parties in the two actions 'substantial[ly] overlap,' even if they are not perfectly identical."  Baatz, 814 F.3d at 790 (internal citations omitted) (alteration in original).

Defendants contend that "th[e] overlap in parties [here] weighs strongly in favor of transfer." (ECF No. 73 at PageID 1260.)  Defendants assert that "[c]ourts in this district have found that where half the parties to a set of actions were the same, the parties substantially overlapped." (Id.) (citing Thomas v. Betts Corp. v. Hayes, 222 F. Supp. 2d 994, 996 (W.D.

9

Tenn. 2002).)  Defendants contend that "six of the ten Defendants [in this case] are named in the Northern District of Mississippi action."  (Id.)  Of the four non-overlapping Defendants, Defendants contend that Magnolia Soap and Bath Co. of Jackson LLC and Magnolia Soap and Bath Co. FRCH, LLC "are owned by other defendants in the . . . Mississippi action," namely, Magnolia Soap and Bath Holding Co, which is their sole member.  (Id.) (citing ECF No. 27-7.)  Meanwhile, Defendants contend, the remaining two non-overlapping Defendants, Hope in Soap Collierville, LLC and Vanguard Enterprises, Inc. "are only nominal defendants in this action," as they "operate Buff City retail locations" and "are only defendants in this action based on a license granted them by Magnolia Soap and Bath Holding Co."  (Id.) (citing ECF Nos. 28, 29.)

Plaintiffs respond that "the parties in both actions do not substantially overlap, and this factor favors denying of the motion."  (ECF No. 80 at PageID 1454.)  Plaintiffs assert that "[n]early half of the Defendants in the Tennessee action (four out of ten) are unique to this action, including critically [(because this action focuses on the continued proliferation of Buff City's trade secrets to Magnolia Soap franchisees in Tennessee)], Magnolia Soap and Bath Co. FRCH, LLC, [and the two Tennessee Franchisees]."  (Id.)  Moreover, Plaintiffs argue:

> The named Tennessee Franchisees are the focal point of this case, but it is the Magnolia Defendants that collaborated to provide the Tennessee Franchisees with Buff City's trade secrets—allowing for the proliferation of these trade secrets into Tennessee.  The inclusion of these limited overlapping Defendants is therefore for the purpose of efficiently litigating this improper trade secret proliferation in Tennessee.

(Id.)  Plaintiffs further assert that "Courts have denied first-to-file grounded motions where parties in a second-filed suit similarly did not completely overlap."  (Id.) (citing Lang v. First Advantage Background Servs. Corp., No. 15-CV-2436, 2016 WL 740288, at *2 (N.D. Ohio Feb. 24, 2016).) (further internal citations omitted.)

There is no established rule for the number or proportion of overlapping defendants needed to establish substantial similarity, and courts may consider the identities of the parties as well. Compare Hertel v. Bank of Am. N.A., No. 1:11-CV-757, 2012 WL 4051220, at *3 (W.D. Mich. Sept. 13, 2012) ("While many of the parties overlap, there are six additional defendants in the action before this Court . . . . Similarly, both matters concern different plaintiffs.") (finding that the parties were not "nearly identical" as required to meet the first factor) with Reese on Behalf of Fifth Third Bancorp v. Carmichael, No. 1:20-cv-886, 2021 WL 1121036, at *3 (S.D. Ohio Mar. 24, 2021) (finding "substantial overlap" where the plaintiff included all fourteen defendants from the first suit "but also name[d] eight additional defendants," as "the eight newly named defendants [were] all also current or former Fifth Third directors or officers" like thirteen of the fourteen defendants in the first case). "Courts generally hold that privity or affiliation between/among defendants is sufficient to find 'substantial overlap.'" Elite Physicians Servs., LLC v. Citicorp Credit Servs., Inc. (USA), No. 1:06-CV-86, 2007 WL 1100481, at *3 (E.D. Tenn. Apr. 11. 2007) (citing Hayes Lemmerz Int'l, Inc. v. Epilogics Grp., No. 03-CV-70181-DT, 2006 WL 2571987, at *2 (E.D. Mich. Sept. 5, 2006) (quoting Urbain v. Knapp Bros. Mfg. Co., 217 F.2d 810, 815 (6th Cir. 1954))) (further internal citation omitted).  One district court in this Circuit has noted, however, that cases where substantial party overlap was found involved "the assignment of legal rights such that the franchisee's [or subsidiary's] liability depend[ed] upon the rights of the franchisor [or parent]"; the court distinguished the dual litigation at issue from that of cases like Elite because "both cases focus on whether each defendant is liable independently." Honaker, 2019 WL 4316797, at *3.

Here, there are both new Plaintiffs and new Defendants who are not in the Mississippi action, but most of these new entities are closely related to the overlapping Parties.  The Mississippi Plaintiffs are Buff City Soap LLC (Tennessee) (see Case No. 3:20-cv-00055-NBB-RP, ECF No. 103 ¶ 1), Buff City Holdings LLC, and Buff City Soap Franchising, LLC.  (See Case No. 3:20-cv-00055-NBB-RP.)  The Plaintiffs before this Court include those three entities plus Buff City Soap Supply LLC and Buff City Soap LLC (Delaware).  The latter was added as a Plaintiff after "Buff City Soap LLC (Tennessee) was merged into Buff City Soap LLC (Delaware)" in September 2021.  (See ECF No. 66 ¶ 3.)  Buff City Soap Supply LLC is "another Delaware entity related to Buff City Soap Holdings."  (ECF No. 59-1 at PageID 871.)  This case includes all six Defendants from the Mississippi action plus Magnolia Soap and Bath Co. of Jackson, LLC, Magnolia Soap and Bath Co. FRCH, LLC, Hope in Soap Collierville, LLC, and Vanguard Enterprises, Inc.  The Court acknowledges Defendants' argument that Magnolia Soap & Bath Holding Co., LLC is the sole member of Magnolia Soap and Bath Co. of Jackson, LLC and of Magnolia Soap and Bath Co. FRCH, LLC (ECF No. 73 at PageID 1260; ECF No. 82 at PageID 1478; ECF No. 27-7 at PageID 474) and that these new Parties are "closely related" to and in many ways "intertwined" with the overlapping Defendants (ECF No. 82 at PageID 1478–79.)  Is it unclear from the pleadings, however, whether determining the liability of Magnolia Soap & Bath Holding Co., LLC in the Mississippi action would necessarily determine the liability of Magnolia Soap and Bath Co. of Jackson, LLC and Magnolia Soap and Bath Co. FRCH, LLC in this case.  (See generally ECF No. 66.)  The remaining non-overlapping Defendants, i.e., Tennessee Franchisees Hope in Soap and Vanguard, however, are distinguishable from franchisees in cases like Elite.  As Plaintiffs assert, determining the Franchisees' liability is an issue of whether those entities "knew that what they were receiving

12

were protected trade secrets but nevertheless proceeded to willfully misappropriate [them]" (ECF No. 80 at PageID 1455), and such liability does not necessarily "depend[] upon the rights of the franchisor." Honaker, 2019 WL 4316797, at *3.

While this case presents a close call because of the balance between the number of new Parties and the corporate identities involved, the Court finds that the Parties in the two actions "substantially overlap," although they are not identical. Baatz, 814 F.3d at 790 (internal citations omitted). Accordingly, this factor weighs in favor of applying the first-to-file rule. Id. Regardless of how the Court finds on this factor, however, the final factor, the similarity of the issues, is not met, making the first-to-file rule inapplicable, as discussed below.

  iii. Similarity of the issues

"Just as with the similarity of the parties factor, the issues need only to substantially overlap in order to apply the first-to-file rule." Baatz, 814 F.3d at 791 (internal citations omitted). "The issues need not be identical, but they must 'be materially on all fours' and 'have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" Id. (quoting Smith, 129 F.3d at 361 (further internal citation omitted in original)).

Defendants assert that "[h]ere, the issues are obviously substantially similar" (ECF No. 73 at PageID 1261), while Plaintiffs respond that "the issues at stake in the two actions [do not] substantially overlap" (ECF No. 80 at PageID 1454). Each Party makes various arguments as to whether the issues substantially overlap with respect to Plaintiffs' misappropriation of trade secrets claims in this case and the contract-based claims in the Mississippi suit. (See ECF No. 73 at PageID 1261; ECF No. 80 at PageID 1454–56; ECF No. 82 at PageID 1479.) The Court finds it unnecessary to address these arguments here because the differences between the false

advertising claims in the two cases are alone sufficient to find that this factor is not met, as discussed below.[3]

Defendants assert that "[w]hile the facts underlying the [false or misleading advertising claims raised in the two actions] are different, the theories raised are substantially similar[,] especially as both cases make false advertising claims pursuant to the Tennessee Consumer Protection Act."   (ECF No. 73 at PageID 1262.)   Plaintiffs respond that their false and/or misleading advertising claims in the two actions are brought under different legal authorities— 15 U.S.C. § 1125(a) and Tenn. Code Ann. §§ 47-18-101 *et seq*. in this action versus the Franchise Rule of the Tennessee Consumer Protection Act and the Mississippi Deceptive Advertising Law in the Mississippi suit—and have different underlying facts.  (ECF No. 80 at PageID 1456.) ("For the Tennessee action, the supporting facts include advertising in connection with the ingredients and benefits of Magnolia soap *products*, . . . . [whereas] [t]he underlying facts in the Mississippi action . . . concern Magnolia Soap's false and/or misleading advertisements related [to] *its selling of franchises*[] while not complying with the applicable Franchise Rule.")  Defendants reiterate in reply that while the false advertising claims in each case are different, "the legal analysis of those claims is closely related."  (ECF No. 82 at 1480.) Defendants assert that "this case [merely] expands the supposed factual basis for th[e] false advertising claims [in the Mississippi action].  That does not defeat substantial overlap of the issues, but shows how the issues are closely related."  (Id.)

The issues in the two cases do not "substantially overlap" under the Baatz standard. Defendants' arguments regarding Plaintiffs' false advertising claims are unpersuasive: these

---

[3] Additionally, Plaintiffs incorporate by reference their purportedly relevant first-to-file arguments as to the trade secrets issue into their claim-splitting argument.  (See ECF No. 80 at PageID 1460 n.5.)  The Court thus addresses those arguments in more detail under its claim-splitting analysis.

claims are unique to this action and, even considered in isolation, defeat substantial similarity between the issues in the two suits.  In the Mississippi action, resolving plaintiffs' claims for violation of the Tennessee Consumer Protection Act and Mississippi's Deceptive Advertising statute will require determining whether Defendants Bynum and Magnolia Soap and Bath Holding Co. advertised Magnolia Soap retail locations as franchise locations and/or offered franchise agreements disguised as "retail store licenses" without complying with the applicable franchise laws.  (See Case No. 3:20-cv-00055-NBB-RP, ECF No. 103 ¶¶ 156–79.)  That determination will leave wholly unanswered the question of whether Bynum and the Magnolia Soap Defendants made actionably false representations about the characteristics of their products under the Lanham Act or the Tennessee Consumer Protection Act.  (See ECF No. 66 ¶¶ 210–231.)  That Plaintiffs proceed under the Tennessee Consumer Protection Act in both cases is of no import where the underlying facts and issues to be resolved are entirely distinct. Plaintiffs' two false advertising counts comprise half of the counts in their First Amended Complaint.  In sum, resolving the Mississippi case would not "'leave[] little or nothing to be determined in'" this action.   Baatz, 814 F.3d at 791 (quoting Smith, 129 F.3d at 361 (further internal citation omitted in original)).  Because this factor is not met, the first-to-file rule is inapplicable.

     iv.   Equitable considerations

Where "all three factors of the first-to-file rule are satisfied . . ., [a court] must also evaluate whether there any equitable concerns that weigh against applying it." Id. at 792.  Such considerations allow the court to avoid "wooden application of the rule . . . .  However, deviations from the rule should be the exception, rather than the norm." Id. (internal citations

omitted).  "Because this Court finds that the first-to-file rule is inapplicable here," however, "it need not address these equitable considerations."  Honaker, 2019 WL 4316797, at *5.

Because the Court finds that the first-to-file rule does not apply in this case, the Court also declines to consider any of the remedies that Defendants seek pursuant to the rule, including transfer of this action to the Northern District of Mississippi, staying this case until the Mississippi litigation is concluded, or dismissing Plaintiffs' Misappropriation of Trade Secrets claim.  (See ECF No. 73 at PageID 1263–64.)  Defendants' Motion to Transfer and Dismiss is **DENIED** in that regard, and this case will remain on its current schedule for disposition.  (See ECF Nos. 39, 78).[4]  The Court will, however, proceed to address Defendants' alternative argument that Plaintiffs' misappropriation of trade secrets claim should be dismissed for claim-splitting.

### C.  Legal Standard for Claim Splitting and Duplicative Litigation

A plaintiff "must join all claims arising from the same set of facts in a single proceeding and cannot split them across multiple fora."  Church Joint Venture, L.P. v. Blasingame, 817 F. App'x 142, 146 (6th Cir. 2020) (quoting Ellis v. Gallatin Steel Co., 390 F.3d 461, 479 (6th Cir. 2004)) (further internal citation omitted).  That a plaintiff "dresse[s] up those facts under what is ostensibly a different legal theory is of no consequence."  Id. (internal citations omitted).

"Claim-splitting and duplicative litigation are variations of res judicata."  Waad v. Farmers Ins. Exch., 762 F. App'x 256, 260 (6th Cir. 2019).  "Res judicata . . . bars subsequent litigation of causes of action where a court has already issued a final decision on the merits in an earlier case and the causes of action were, or should have been, litigated in the earlier case

---

[4] On April 25, 2022, Defendants filed a Motion for Leave to Serve Subpoenas out of Time and to Quash Plaintiffs' Subpoenas Duces Tecum.  (ECF No. 93.)

between the same parties." Id. (citing In re Alfes, 709 F.3d 631, 638 (6th Cir. 2013) (internal citation omitted in original)).  Res judicata applies when four elements are met:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

Vient v. Paxton Media Grp., No. 5:19-CV-00141-GNS, 2020 WL 1539933, at *2 (W.D. Ky. Mar. 31, 2020) (quoting Trs. of Operating Eng'rs Local 324 Pension Fund v. Bourdow Contracting, Inc., 919 F.3d 368, 380 (6th Cir. 2019) (internal quotation marks and citation omitted in original)).  "An identity of the causes of action exists 'if the claims arose out of the same transaction or series of transactions, or if the claims arose out of the same core of operative facts.'"  Id. at *4 (quoting Bourdow Contracting, Inc., 919 F.3d at 383 (further citation omitted)).  "When assessing this element of res judicata, the [c]ourt must look 'beyond the legal theories asserted [and] see if the two claims stem from the same underlying factual circumstances.'"  Id. (internal citation omitted).

"[T]he test for claim splitting is not whether there is a finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit."  Waad, 762 F. App'x at 260 (quoting Katz v. Gerardi, 655 F.3d 1212, 1218 (10th Cir. 2011)) (alteration in original).  "Essentially, claim splitting is the same as res judicata, but with a presumption of a final judgment instead of an actual final judgment."  Id. (citing Katz, 655 F.3d at 1218).  "In a similar vein, the doctrine of duplicative litigation allows 'a district court [to] stay or dismiss a suit that is duplicative of another federal court suit' using 'its general power to administer its docket.'"  Id. (quoting Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000) (further internal citations omitted)).  "The difference between claim splitting and duplicative litigation is in name only."  Id.  "These doctrines all come with a caveat: they 'do[] not apply to claims that were not ripe at

the time of the first suit.'"  Id. (quoting Rawe v. Lib. Mut. Fire Ins. Co., 462 F.3d 521, 530 (6th Cir. 2006) (further internal citation omitted in original)).

A defendant may properly move for dismissal of a claim due to claim-splitting or duplicative litigation under Federal Rule of Civil Procedure 12(b)(6).  See, e.g., Waad, 762 F. App'x at 259–60.  When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the complaint's factual allegations as true.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).  "A complaint need not contain 'detailed factual allegations,' but it must contain more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  Allred v. Rodriguez, 399 F. Supp. 3d 730, 732 (W.D. Tenn. 2019) (quoting Twombly, 550 U.S. at 555).  A complainant must "plead facts sufficient to show that [a] claim has 'substantive plausibility.'"  Wehrly v. Allstate Ins. Co., No. 5:21-135-KKC, 2022 WL 303665, *3 (E.D. Ky. Feb. 1, 2022) (quoting Johnson v. City of Shelby, 574 U.S. 10, 12 (2014)).  That plausibility must be found on the face of the complaint.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### D.  Analysis for Claim Splitting and Duplicative Litigation

Defendants assert that Plaintiffs' misappropriation of trade secrets claims should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs have "improperly split [their] claims related to trade secrets in a manner that not only duplicates litigation[] but is expressly barred by the claim-splitting doctrine."  (ECF No. 73 at PageID 1264.)  Defendants assert that Plaintiffs' trade secrets claims are "based on the same facts as [their] claims in the . . . Mississippi litigation."  (Id.)  Specifically, Defendants contend that the Mississippi action is based on assertions "about Bynum and BCNA taking Buff City's trade secret, confidential and proprietary information and sharing that information with the Magnolia Defendants.  This is

exactly the transaction at issue in the instant case." (Id.)  Therefore, Defendants contend, "Buff City was required to bring any misappropriation of trade secrets claim it had in its initial lawsuit that arose out of Bynum and BCNA's supposed taking of Buff City's trade secret and confidential information in order to provide that trade secret and confidential information to the Magnolia Defendants." (Id.)  Finally, Defendants assert that Plaintiffs should not be permitted to "go from district to district filing slightly different lawsuits based on [the] same facts," as "such a system [would be] judicially inefficient and anti-competitive" and would deny Defendants the protection to which they are entitled from repetitive litigation.  (ECF No. 73 at PageID 1266.) (internal citations omitted.)

Plaintiffs respond that there is no claim splitting in the two actions because "Plaintiffs' trade secrets counts derive from a different set of operative facts than do its business-related claims in the Mississippi action."  (ECF No. 80 at PageID 1458.)  In addition to incorporating their first-to-file arguments (id. at PageID 1460 n.5), Plaintiffs contend that "facts at issue in the Tennessee action pertaining to Plaintiffs' trade secrets claims that are *not* at issue in the Mississippi action include but are not limited to:

> (i) what communications Magnolia Soap entities made to Hope in Soap and Vanguard;
> (ii)  the actions of Hope in Soap and Vanguard related to those communications; (iii)
> knowledge by Vanguard and Hope in Soap that the recipes and formulation they
> received from the Magnolia Defendants were Buff City trade secrets; (iv) the reasonable
> steps Buff City took to keep confidential its trade secrets; (v) other facts to establish that
> Buff City's alleged trade secrets are in fact trade secrets; (vi) facts to establish that the
> Defendants have misappropriated the trade secrets.

(Id. at PageID 1460.)  Plaintiffs additionally contend that the facts in the Mississippi case do not overlap with whether the Magnolia Defendants acted improperly by disclosing Buff City proprietary information to their Tennessee Franchisees.  (Id. at PageID 1455.) (internal citations omitted.)  Plaintiffs contend that the suits are not duplicative because "even with a determination

in the Mississippi action, Plaintiffs' trade secret misappropriation claims will not be settled, as they involve the distinct legal questions as to how Plaintiffs' trade secrets were misappropriated—an inquiry separate from the Mississippi action." (Id. at PageID 1461.) Plaintiffs assert that the "little or nothing to be determined" standard applies equally to claim-splitting and duplicative litigation as it does to the first-to-file rule because Waad cites to the case that formulated the "little or nothing to be determined standard." (ECF No. 80 at PageID 1461, 1461 n.6.) (citing Waad, 762 F. App'x at 260; Smith, 129 F.3d at 361.) Plaintiffs assert that the Mississippi action is "chiefly about" whether Defendants breached their duties to Plaintiffs under the Operating Agreement. (Id.) They claim that determining whether the contract contained a confidentiality agreement or "defining the bounds of the [Parties'] fiduciary relationship" under the contract, for example, would not resolve the trade secret misappropriation claims, which turn on "whether reasonable efforts were taken to protect the trade secrets." (Id. at PageID 1461–62.) (citing Learning Curve Toys, Inc. v. PlayWood Toys, Inc., 342 F.3d 714, 725 (7th Cir. 2003).) Plaintiffs finally assert that "even if the Court finds two suits to be duplicative, the Court always has the discretion to allow both suits to proceed." (ECF No. 80 at PageID 1460.) (citing Smith v. S.E.C., 129 F.3d 356, 361 (6th Cir. 1997) (further internal citation omitted).) (See also id. at PageID 1462.)

Defendants reiterate in reply that "[t]he facts supposedly supporting Buff City's [misappropriation of trade secrets] claim here are pled in the . . . Mississippi case. . . . By filing multiple related suits[,] Buff City is able to [improperly] apply economic pressure against Defendants." (ECF No. 82 at PageID 1481.) Defendants state that "Buff City's argument [] that the ultimate ruling in the Mississippi case might not resolve the misappropriation of trade secrets claim in this case . . . . is potentially true because Buff City has raised a new theory of

recovery." (Id. at PageID 1482.)  Defendants contend, however, that "the appropriate test is whether the claims in the two litigations arise out of the same operative facts" and that Plaintiffs' alternative standard "would waste party and court resources" and "is contrary to the law." (Id.) Defendants assert that, in both cases, "Buff City claims that Defendants misappropriated Buff City's trade secrets and seeks damages based on that misappropriation"; they contend that the "difference is Buff City's theories of recovery[,] not the operative facts," which "are the same in both cases." (Id.)

The operative facts as pled in the complaint, rather than the issues to be resolved, are what matter for claim-splitting purposes.  Waad does not cite the "little or nothing to be determined" standard from Smith, but instead cites Smith's proposition that duplicative litigation requires "an identity between the causes of action," i.e., an "identity of the facts creating the right of action and the evidence necessary to sustain each action." Waad, 762 F. App'x at 260 (citing Smith, 129 F.3d at 361); id. at 260 n.1 (internal citation and quotation marks omitted).  The Court has also not found any binding case law applying the "little or nothing to be determined" standard to claim-splitting or duplicative litigation issues. Accordingly, the Court looks to whether the core facts giving rise to Plaintiffs' misappropriation of trade secrets claims in this case also give rise to the relevant claims in the Mississippi action.

Nearly all the operative facts that Plaintiffs have pled in this case with respect to its misappropriation of trade secrets claims are also pled in their Mississippi complaint.  The Complaint here discusses the Operating Agreement, including the provision that designates the "recipes, trade secrets, etc [sic] final ownership of all products [as] belong[ing] to Buff City Soap [LLC]" and the provision that establishes the licensing fee for use of Buff City Soap LLC's "intellectual property, including trade secrets, recipes, marketing strategies, industry expertise,

and business model." (Id. ¶¶ 41–42.)  The Mississippi complaint includes the same facts about the Operating Agreement, also quoting its provisions that refer to "trade secrets."  (See Case No. 3:20-cv-00055-NBB-RP, ECF No. 103 ¶¶ 20–24.)   Both complaints discuss Bynum's alleged unauthorized use of Buff City's name to sell products at the Atlanta wholesale market; they both allege that Buff City subsequently notified Bynum that it would be terminating the Operating Agreement and withdrawing consent for use of its trade secrets, as well as that she had no right to use Buff City's trade secrets in other ventures.  (See ECF No. 66 ¶¶ 48–49; Case No. 3:20-cv-00055-NBB-RP, ECF No. 103 ¶¶ 33–35.)  Both complaints also allege Bynum's continued misuse, whether under the Operating Agreement or because they were Trade Secrets, of the information such as product formulations and business strategies that she learned from Buff City.  (See ECF No. 66 ¶¶ 62, 63; Case No. 3:20-cv-00055-NBB-RP, ECF No. 103 ¶¶ 37, 42, 44.) In many places, the complaints in the two cases are identical, except that the Mississippi pleading repeatedly uses some variation of the terms "confidential and proprietary recipes and formulas" instead of "trade secrets."  (See ECF No. 66 ¶¶ 43–44, 50, 52, 60, 62; Case No. 3:20-cv-00055-NBB-RP, ECF No. 103 ¶¶ 25, 32, 37, 39, 42, 44.)

Even facts that appear unique to this action on first blush are implicated in the Mississippi pleading.  Plaintiffs allege here that Defendants owed a fiduciary duty of loyalty to Buff City, which required the "maintenance of the Buff City Trade Secrets' confidentiality," even apart from any contractual obligations.  (ECF No. 66 ¶ 45.)  Plaintiffs argue in their Response brief that "the Mississippi action is chiefly about[] the specific duties Defendants owed to Plaintiffs under the Operating Agreement[] and whether Defendants breached those duties," whereas "trade secret protection does not require a written confidentiality agreement." (ECF No. 80 at PageID 1461.)  The Mississippi complaint, however, also alleges that the

defendants had fiduciary duties to Buff City, including the duty not to compete with Buff City, which the defendants allegedly breached by "using Buff City's confidential and proprietary information to compete with Buff City." (Case No. 3:20-cv-00055-NBB-RP, ECF No. 103 ¶¶ 94, 96.) Plaintiffs also allege that any recipes that Bynum developed at BCNA constitute Buff City's Trade Secrets by operation of the Operating Agreement. (ECF No. 66 ¶¶ 54–60.) Resolving this contention is a matter of contract interpretation and does not implicate additional facts not pled in the Mississippi case. Furthermore, Plaintiffs have pled examples of "Buff City LLC's reasonable measures" to maintain the secrecy of their Trade Secrets, such as "keeping the information related to Buff City Soap LLC's oil ratios and lye mixture ratios secret." (Id. ¶¶ 30–31.) Inquiry into the secrecy measures that Plaintiffs took dovetails with examination of the "trade secrets" and/or so-called "confidential and proprietary information" that Plaintiffs allegedly misused in the Mississippi case. Overall, the operative facts pled in the two cases remain the same; Bynum allegedly used proprietary Buff City information to create a competing business, and the issues of whether such action was in violation of the Operating Agreement and/or constituted misappropriation of trade secrets could have been raised based on those same key facts.

Plaintiffs' contention that facts and issues related to the Magnolia Soap franchisees preclude a finding of duplicative litigation or claim-splitting are belied by the paucity of allegations concerning these entities. In particular, the Complaint in this case makes almost no substantive allegations relating to the two Magnolia Soap & Bath Franchisees, i.e., Vanguard and Hope in Soap. It alleges only that "[u]pon information and belief, Bynum and the Magnolia Soap Defendants have made preparations to open multiple new Magnolia Soap locations which will similarly use Buff City Trade Secrets" (id. ¶ 65) and that "[u]pon information and belief,

Bynum and the Magnolia Soap Defendants exert a substantial degree of control over the[ir] purported franchisees," including over "the manufacturing of the products" (id. ¶ 74).  Plaintiffs cannot fail to allege sufficient facts related to these entities as would be required to survive a motion under Rule 12(b)(6) and then claim that this suit involves unique facts regarding the information shared with, and the actions of, these entities.

The Court acknowledges that "dismissing a suit that is not truly duplicative of a prior one is an abuse of discretion."  Waad, 762 F. App'x at 260 (citing Smith, 129 F.3d at 361). Nevertheless, after careful consideration, the Court finds that Plaintiffs' two counts for misappropriation of trade secrets should have been brought in the Mississippi action and should therefore be dismissed for claim-splitting.  The Court therefore GRANTS Defendants' Motion with respect to dismissal of Plaintiffs' misappropriation of trade secrets claims.

Since Plaintiffs' misappropriation of trade secrets claims must be dismissed under the doctrines of claim-splitting and duplicative litigation, the Court DENIES AS MOOT Defendants' argument that "Buff City's theory that it owns [as Trade Secrets] the recipes created by Bynum" based on the Operating Agreement "should be dismissed because it fails to state a claim upon which relief can be granted."  (ECF No. 73 at PageID 1267.)  Plaintiffs' false advertising claims remain for adjudication before this Court.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion is **DENIED** as to the first-to-file rule, **GRANTED** as to their claim-splitting argument, and **DENIED AS MOOT** as to their

12(b)(6) failure-to-state-a-claim argument as to Plaintiffs' contract-created-trade-secrets theory.

      **SO ORDERED**, this 29th day of April 2022.

                        /s/ Jon P. McCalla

                        JON P. McCALLA
                        UNITED STATES DISTRICT JUDGE